UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                               Case No.: 8:17-cr-131-T-33SPF

AKBAR FARD,

_____/

## ORDER

Before the Court is Defendant Akbar Fard's Motion for Bond Pending Appeal (Doc. 175) and the United States' response in opposition (Doc. 176). For the reasons stated below, Defendant's motion is denied.

## BACKGROUND

On March 22, 2017, a grand jury returned an indictment charging Fard with six counts of wire fraud in violation 18 U.S.C. § 1343. (Doc. 1). After a five-day trial, the jury returned a verdict of guilty on all counts. (Doc. 109). Thereafter, the District Judge found, "based on the facts proven at trial and the jury's finding the defendant guilty on all counts, at least $1,472,082.00 was obtained by the defendant from his wire fraud scheme." (Doc. 143 at 2). The loss amount represented approximately 70 percent of the total $2,113,845.24 paid on the contract set forth in the Indictment. Given the loss amount, the advisory guideline range was calculated to be between 46 months and 57 months. (Doc. 164). The District Judge determined, however, that the advisory guideline range was greater than necessary to satisfy the statutory purpose of sentencing.

(*Id.*) On August 23, 2018, Mr. Fard was sentenced to thirty-six (36) months in prison on each count to run concurrently. (Doc. 163). Fard is now due to surrender on October 3, 2018. (Doc. 175 at 2).

## ANALYSIS

Section 3143(b)(1), Title 18, United States Code, provides the framework for deciding whether a defendant should be released on bond pending appeal. In order to be released, a defendant must establish the following by clear and convincing evidence:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for the purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and
> (4) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985) (citing 18 U.S.C. § 3143(b)(1)). "[T]he burden of establishing these factors is on the convicted defendant." *Id.*

In its response, the United States concedes that Fard satisfied his burden as to the second factor—his appeal is not for the purpose of delay. In addition, Fard asserts that he poses no danger to the community as evidenced by there being "no incidents while out on bond." (Doc. 175 at 5). The United States offers no rebuttal to Fard's assertion. The United States, however, does contest the other factors, arguing that Fard is likely to flee, he has not raised a "substantial question" and a determination favorable to the defendant on the issues raised would not result in a reversal or new trial.

I.  **Risk of Flight**

Section 3143(b)(1)(A) commands that a person who has been found guilty of an offense and sentenced to a term of imprisonment shall be detained unless the Court finds "by clear and convincing evidence that the person is not likely flee." Fard suggests that he is not a flight risk because he has: (1) known about the government investigation since 2013, (2) put up a corporate surety bond, and (3) complied with all conditions of bond without incident. (Doc. 175 at 5). The United States responds by asserting that Fard is a risk of flight because he "had passports from three countries (Iran, Canada, and the U.S.), close ties and significant travel to a non-extradition country (Iran), and minimal contacts to this District." (Doc. 176 at 4).

Previously, Fard moved for modification of conditions of pretrial release. (Doc. 27). The District Judge denied the motion because the United States met its burden of establishing Fard's risk of flight by a preponderance of the evidence. (Doc. 40). In reaching this conclusion, the District Judge found that Fard's ties to Iran weighed heavily against allowing pretrial release because "the possibility exists that he could flee to Iran, where no extradition treaty exists." (*Id.* at 5-6 (quoting *United States v. Kouchekzadeh*, No. 08-cr-03A, 2008 U.S. Dist. LEXIS 34669, *8 (W.D.N.Y. Apr. 28, 2008))). As the District Judge further noted:

> Fard speaks Farsi, he and his wife are both from Iran, and they have substantial ties to Iran. Fard has the ability to flee to a non-extradition country to which he has extensive, recent travel. As a highly educated professional, Fard has the means to engage in international travel. Moreover, he faces significant prison time, if convicted of the charged offenses. . . Thus, Fard has substantial reason to flee to a safe haven from U.S. prosecution.

(*Id.* at 6).

The likelihood that Fard will flee has only increased since the District Court's findings. Instead of facing the potential for significant prison time, Fard has been convicted, sentenced, and is due to begin his three-year sentence. At this post-conviction stage, the burden now shifts to Fard to show by clear and convincing evidence that he is not likely to fee. *Giancola*, 754 F.2d at 901. The Court finds that Fard failed to meet his burden.

## II. Substantial Question

In the seminal case of *Giancola*, the Eleventh Circuit instructed that the term "substantial question" means "a 'close' question or one that very well could be decided the other way." *Giancola*, 754 F.2d at 901. It is a question of "more substance than would be necessary to a finding that it was not frivolous." *Id.* Deciding whether a substantial question has been raised is "determined on a case-by-case basis." *Id.*

Fard raises the following two questions in his motion: (1) whether evidence adduced at trial was sufficient to sustain his conviction, and (2) whether the District Judge erred in calculating the applicable advisory sentencing guideline range. The Court finds that neither issue raises a substantial question.

### A. *Sufficiency of the Evidence*

As Fard acknowledges, the "standard for assessing the sufficiency of evidence is whether any reasonable view of the evidence, considered in the light most favorable to the government, is sufficient to allow a jury to find guilt beyond a reasonable doubt."

*United States v. Leonard*, 138 F.3d 906, 908 (11th Cir. 1998). Fard now argues, as he did unsuccessfully to the jury, that the government received the benefit of its bargain so there was insufficient evidence of a scheme to defraud. The Eleventh Circuit has stated that "a 'scheme to defraud,' as that phrase is used in the wire-fraud statute, refers only to those schemes in which a defendant lies about the nature of the bargain itself." *United States v. Takhalov*, 827 F.3d 1307, 1313 (11th Cir.), as revised (Oct. 3, 2016), opinion modified on denial of reh'g, 838 F.3d 1168 (2016). While a lie about the nature of the bargain is a necessary element, there does not need to be a loss amount for a defendant to be convicted of wire fraud. *See, e.g. United States v. Near*, 708 F. App'x 590, 598-602 (11th Cir. 2017) (affirming wire fraud convictions where "district court determined that there was no loss to the government in this case because NSF and NASA got what they bargained for").

The Court correctly instructed the jury regarding the term a "scheme to defraud" by using the examples provided by the Eleventh Circuit in *Takhalov*. See Jury Instruction No. 11 (Doc. 108 at 13). The evidence presented at trial, in the light most favorable to the United States, established that Fard lied about the nature of the bargain itself. The United States bargained with Fard to pay for the estimated costs of his research, such as the cost of a research assistant and the use of a pycnometer, but instead the evidence showed that Fard diverted nearly 70 percent of payments for his own personal use. The evidence, in a light most favorable to the government, established that these diverted funds were spent on personal items unrelated to the research, including: mulch, groceries, pizza, and beer. Accordingly, whether the jury had sufficient evidence

to conclude that Fard engaged in a scheme to defraud does not present a substantial question.

### B. Advisory Sentencing Guidelines

Fard claims his sentencing guidelines range was calculated erroneously in violation of *Rita v. United States*, 551 U.S. 338 (2007). (Doc. 175 at 14). As previously stated, the District Judge found that "based on the facts proven at trial and the jury's finding the defendant guilty on all counts, at least $1,472,082 was obtained by the defendant from his wire fraud scheme." (Doc. 143 at 2). The $1,472,082 loss amount represented the diverted amount (approximately 70 percent) of the total $2,113,845.24 the government paid. "In a case involving government benefits (*e.g.*, grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained *by unintended recipients or diverted to unintended uses*, as the case may be." USSG §2B1.1, comment. (n.3(F)(ii)) (emphasis added). Because the loss was more than $550,000 but not more than $1,500,000, the offense level was increased by 14 levels. *See* USSG §2B1.1(b)(1)(H).

Fard points to *United States v. Near,* an unpublished Eleventh Circuit opinion, to suggest that a substantial question exists as to whether the loss amount, and by extension the sentencing guidelines, was calculated in error. 708 F. App'x 590 (11th Cir. 2017). In *Near*, the district court found that the defendants "were not unintended recipients" because the purpose of the program was to help small businesses commercialize technology products, and the evidence established that the corporate defendant was such

a small business. *Id.* at 603. The Eleventh Circuit held that the district court's finding was not clearly erroneous. *Id.*[1]

The district court in *Near* credited the testimony at sentencing of a forensic accountant for the defense in concluding that the government agencies got the full benefit of their bargains. *Id.* at 595. The Eleventh Circuit did not consider whether Near diverted money to unintended uses because the district court found that the value of the Near's labor—along with labor, equipment, and materials provided by Georgia Tech and UT—was worth more than any loss suffered by the government. *Id.*

Here, Fard diverted approximately 70 percent of the money away from the small business and used those diverted funds for unintended uses such mulch, groceries, pizza and beer. At sentencing, the Court considered victim impact statements from NASA and the Department of the Navy. NASA stated that "any alleged end-product of the NASA SBIR contracts Defendant obtained by fraud is valueless because the Government (in this case, NASA) was not seeking any economic benefit." (Doc. 157 at 28). Likewise, the Navy stated that a final report was never received and any work that had been partially completed "is necessarily tainted by suspicion regarding the veracity of the statements Akbar Fard and/or by the probability that Dr. Fard cut corners in carrying out the development tests or analysis. Any analysis or conclusions drawn by

---

[1] The Eleventh Circuit will find clear error only when it is "left with a definite and firm conviction that a mistake has been committed." *Near*, 708 F. App'x at 603 (quoting *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005)).

Dr. Fard's work inevitably would have to be repeated in its entirety in order to be found credible." (Doc. 154 at 4).

As a result, whether the District Judge's findings related to the loss amount are clearly erroneous is not a close call. Fard failed to demonstrate a substantial question.

### III. Unlikely to Result in a Reversal or an Order for a New Trial

Finally, while lack of sufficient evidence to support the verdict would result in a reversal, the same is not true for the alleged error in calculating the advisory sentencing guideline range. A miscalculation of the advisory sentencing guidelines range "warrants vacating the sentence, unless the error is harmless." *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009). "A Sentencing Guidelines miscalculation is harmless if the district court would have imposed the same sentence without the error." *Id.* The District Judge stated that she "would have imposed the same sentence regardless of the guideline calculations." (Doc. 164). Therefore, Fard has failed to satisfy his burden.

Accordingly, it is hereby ORDERED:

Defendant Akbar Fard's Motion for Bond Pending Appeal (Doc. 175) is DENIED.

**DONE AND ORDERED** in Tampa, Florida, this 1st day of October, 2018.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE